Filed 9/3/14  K.J. v. Super. Ct. CA2/6
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| K. J.,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF VENTURA COUNTY,<br><br>    Respondent;<br><br>VENTURA COUNTY HUMAN SERVICES AGENCY,<br><br>    Real Party in Interest. | 2d Civil No. B255895<br>(Super. Ct. Nos. J069093, J069094)<br>(Ventura County) |

K. J. (Mother) files a petition for extraordinary writ challenging an order terminating reunification services and setting a hearing pursuant to Welfare and Institutions Code section 366.26.[1]  We deny the petition.

FACTUAL AND PROCEDURAL HISTORY

Mother and Gregory J. (Father) have two sons, one born in 2007, and the other born in 2008.  Mother suffers from schizophrenia.  Her symptoms are under

_____

[1] All statutory references are to the Welfare and Institutions Code unless otherwise stated.

control with medication and therapy.  In 2012, Father had sole custody of the children and Mother was living in Colorado.  Mother had not seen the children for almost a year.

Father suffers from bipolar disorder and has a history of substance abuse, especially alcohol.  In October 2012, when the children were three and five years old, Father was arrested for endangering them.  He and the children were flooding a neighbor's yard and spraying water into the home in retaliation for prior Child Protective Services' reports.   He was drunk and the children were naked, dirty, and unfed.

The Ventura County Human Services Agency (HSA) detained the children and filed a petition pursuant to section 300.  As to Mother, the petition alleged that her mental health rendered her unable to care for the children, as evidenced by a lack of contact for over a year.  The juvenile court ordered the children removed.   In November, it conducted a jurisdictional hearing at which both parents appeared.

In January 2013, the juvenile court sustained the allegations of the petition.  It ordered a reunification plan for Mother that included mental health counseling, psychotropic medication evaluation and monitoring, and parenting classes.

By March 2013, Mother had completed her parenting class.  She was speaking daily with the children by telephone and visited them "with the assistance of the maternal grandfather."  The visits were "reported to go well and [were] beneficial to the children."  HSA initiated a process with the State of Colorado to arrange a home study for potential placement with Mother pursuant to the Interstate Compact on the Placement of Children (ICPC).  (Fam. Code, § 7900, et seq.)  HSA reported that Father had aggressive outbursts during his supervised visits with the children.

In May, Mother petitioned for liberalized visits in her Colorado home leading to placement, including a summer visit.  The children had not yet visited there. Mother had visited Ventura three times for court appearances and visited the children each day of those visits.  HSA reported, "[W]hen and if the State of Colorado has approved the mother's home then the [HSA] will make arrangements for a summer

2

visit. . . . [¶] . . . [A] visit can be approved to occur [in Colorado] between the mother and the children prior to the completion of the home study if it won't be completed before summer ends." It agreed, in the meantime, to liberalized visits in California. Mother had a week-long visit with the children in Ventura in June and continued to speak daily to them by telephone.

At the six-month status review in July, the juvenile court ordered continuing reunification services to both parents. HSA expressed concern that Mother had a "2 month gap in therapeutic services." Mother's home had not been evaluated for placement. A social worker testified that she believed HSA needed ICPC approval for a Colorado visit. In September, the court adopted HSA's uncontested reunification plan.

Father was allowed only supervised visits. Mother used her unsupervised visits to give him unsupervised access to the children. She first did this in June on Father's Day. When the case worker discovered this, she admonished Mother and Father and warned them of the consequences. Before a four-day unsupervised visit between Mother and the children in August, the case worker again admonished Mother not to give Father access to the children. Mother allowed access twice more at the Ventura County Fair and at a Chuck E. Cheese restaurant. She told the case worker she knew it was not permitted but that Father kept asking her and she felt guilty. HSA terminated Mother's overnight and unsupervised visits due to safety concerns.

The juvenile court terminated Father's parental rights in November because he did not comply with the reunification plan and was aggressive during visits. During one outburst, he placed a case worker in a "bear hold." He was using alcohol again.

At the 12-month review, HSA recommended that the juvenile court terminate services to Mother. It reported that she had not benefitted from reunification services and was unable to appropriately interact with and parent the children during their supervised visits in California. It reported that the children were well-behaved in

3

their foster home, but acted out during visits with Mother. The children's behavior with her was out of control and they would not respond to her direction.

The juvenile court conducted an evidentiary hearing and terminated services to Mother. It ordered continuing visitation with Mother and set the matter for a hearing on a permanent plan pursuant to section 366.26.

## DISCUSSION

The juvenile court did not abuse its discretion when it terminated services to Mother. HSA provided reasonable reunification services.

Visitation is a critical component of reunification services (*In re Luke L.* (1996) 44 Cal.App.4th 670, 679-680) and lack of visitation can erode the parental relationship. (*In re Monica C.* (1995) 31 Cal.App.4th 296, 308.) Mother is correct that HSA did not need ICPC approval to arrange a parental visit, or placement, in Colorado. (*In re C.B.* (2010) 188 Cal.App.4th 1024, 1033.) HSA's confusion on this point delayed a summer visit to Colorado and evaluation of Mother's home for placement. But it did not prevent reunification.

HSA provided reasonable visitation for Mother in California. Mother reported that her initial unsupervised visits went well, but she lost the privilege of having unsupervised visits when she misused it. She gave Father unauthorized access to the children in June and twice in August. Father had endangered the children in the past, was aggressive, and was abusing alcohol again. Mother knew she was not permitted to allow access. A case worker admonished her, but she did it again. During the ensuing supervised visits, Mother demonstrated ineffective parenting despite having completed a parenting class. The children were ill-behaved with her and well-behaved in foster care. In the spring, HSA was optimistic about placing the children with Mother, but her conduct during the summer reasonably caused it to reconsider. ICPC approval was not the obstacle. HSA had planned to arrange a late summer visit in Colorado even without ICPC approval. But this changed when Mother gave Father access, ignored the social worker's admonishment, lost unsupervised and overnight

4

visitation, and demonstrated poor parenting in the supervised visits.  The result would not have been different if HSA had understood that ICPC approval was optional. Substantial evidence supports a determination that returning the children to Mother would have been detrimental to them.  (§ 366.22, subd. (a).)  The juvenile court did not abuse its discretion when it terminated services and set the matter for a hearing on a permanent plan.

## DISPOSITION

The petition is denied.

<u>NOT TO BE PUBLISHED.</u>

GILBERT, P. J.

We concur:

YEGAN, J.

PERREN, J.

5

Bruce A. Young, Judge

Superior Court County of Ventura

_____

Richard C. Gilman, for Petitioner.

No appearance for Respondent.

Leroy Smith, County Counsel, Linda Stevenson, Assistant County Counsel, for Real Party in Interest.